561 So.2d 663 (1990)
In the Interest of C.B. and J.P., Minor Children.
No. 89-1474.
District Court of Appeal of Florida, Fifth District.
May 10, 1990.
Rehearing Denied June 6, 1990.
*664 Leon B. Cheek of Cheek & Trotter, Casselberry, for appellant, Court Appointed Guardian.
James A. Sawyer, Jr., Orlando, for appellee, Dept. of HRS.
HARRIS, Judge.
The court appointed guardian of the dependent children appeals an order dismissing her petition for termination of parental rights. The trial court determined that the statute which permits any person with knowledge of facts justifying termination of parental rights to file such a petition is unconstitutional.[1] We reverse.
On March 20, 1986 the Juvenile Division of the Ninth Judicial Circuit Court adjudicated C.B. and J.P. as dependent children and placed them with a court appointed guardian. After a review of the proceedings on May 19, 1987 and after allegations of sexual abuse were made, the court continued to find the children dependent "based upon neglect and lack of supervision of both children, sexual abuse of C.B. and emotional abuse of J.P." Maternal visitation was terminated and custody was continued with the guardian and her husband.
Subsequent reviews indicate that the mother was referred to a psychologist for further evaluation because of the sexual abuse allegations. Although she started a program of individual psychotherapy, she failed to complete the program. She had considerable difficulties in changing her lifestyle. There were no improvements in her residence; she continued to have different tenants, often men; and she remained unemployed. Although she passed a correspondence test to enter a work-study program, she never reported to the program. She disappeared for a period of time, telling her mother that "someone was out to kill her."
HRS lost contact with her for several months. It also was unable to locate the maternal grandmother. After six months the mother reappeared, again pregnant and unmarried. She was in jail. She had had no steady employment for 12 months and she had had no dependable residence for 12 months. She had not completed her case plan with HRS.
But then on February 22, 1989 a review report was filed by an HRS counselor stating that it was the policy of HRS to "unite families not separate them" and recommending that since the "past charges against [the mother] have never been proven" she be given greater visitation rights. The report was somewhat critical of the guardian's continuing custody [although the report recommended that the guardian continue "temporary custody"] yet supportive of the maternal grandmother and her desire for custody. The mother was living with the maternal grandmother.
Two days after the report was filed, the mother filed a motion for visitation "for a few days" during the Christmas holidays at the home of the maternal grandmother, and she and the maternal grandmother motioned for a change of placement of the children to the maternal grandmother or a foster care facility. HRS then filed a motion in support of the mother's obtaining supervised visitation.
The guardian, who had had custody of the children for over a year, had witnessed their conduct and behavior after their previous experience with their mother. The guardian indicates that she became concerned about possible sexual abuse after she observed firsthand exceptional sexual knowledge and activities by one of the children. After an evaluation in which anatomically correct dolls were used, a psychologist concluded that the boy had "probably been sexually abused by his mother." Through HRS, the guardian brought this to the attention of the court and the mother's visitation was terminated.
On March 9, 1989, the paternal grandmother, as court appointed guardian of the children, petitioned the court to terminate *665 parental rights. Among her allegations were:
1. The guardian's son was the father of one of the children, the other's father was unknown;
2. The mother had a long history of neglect (at least four referrals);
3. At the time of the adjudication of dependency, the mother had been arrested and had left the children with someone who notified HRS that she could not keep them;
4. The mother has a history of alcohol related problems, etc.;
5. The children have been left with numerous caretakers and once ran away from a severely intoxicated caretaker;
6. One of the children was held out of school for a month and a half because of head lice;
7. The natural father of the one child [the guardian's son] has a history of alcohol and drug abuse and has been in the state prison system during the dependency proceedings;
8. Neither parent has provided support for the children even though the mother was twice ordered to do so;
9. The mother has failed to complete two previous performance agreements entered into with HRS;
10. Since the dependency adjudication the mother has been twice arrested and still has pending a charge of possession of cocaine; and
11. One of the children was sexually abused while under the care of the natural mother.
The guardian filed her petition under the provisions of Section 39.461(1), Florida Statutes (1989) which permits the filing of a petition by "any other person who has knowledge of the facts alleged or is informed of them and believes that they are true." The trial judge, without stating his reasons, held this provision unconstitutional.
HRS seeks to justify this finding on the basis that by permitting the filing of such action by "strangers who for their own personal motives wish to adopt a distressed child,"[2] the legislature violated the family's right to privacy. One might question the standing of HRS to challenge the constitutionality of a statute on the basis of someone else's right to privacy. See Cooper v. Sinclair, 66 So.2d 702 (Fla. 1953). After all, how is HRS affected by the alleged invalid law? HRS urges that permitting strangers to file this action would interfere with its policy of reuniting families. While we agree that a policy of reuniting families is admirable, we are also aware that blind pursuit of that policy could conflict with HRS's duty to protect the children who are at risk because of that family. It is probable that this policy of reunification prompted the filing of this petition; it is possible that the legislature authorized this proceeding in order to test that policy in particular cases.
Here the guardian was the paternal grandmother of one of the children and the court appointed guardian of both  hardly a "stranger." She was concerned about the character of the mother as evidenced by past conduct, the mother's ability to be responsible as evidenced by her failure to complete two performance agreements, the risk of sexual abuse to the children, and more importantly, the apparent lack of concern by HRS's recommendation of visitation on the basis that "the charges hadn't been proved."[3] Because of these concerns, she wanted a judicial determination, not an HRS determination, as to whether the parental rights should be terminated. The legislature has decided she has the right to that determination. A statute is presumed valid unless clearly *666 erroneous, arbitrary or wholly unwarranted. See State v. State Board of Education of Florida, 467 So.2d 294 (Fla. 1985).
A claim that the statute permitting grandparent visitation was unconstitutional because of the mother's "right of privacy to raise her children as she sees fit" was raised by the mother in Sketo v. Brown, 559 So.2d 381 (1st DCA 1990). After reviewing cases construing this right of privacy claim, the court held:
We find nothing in those cases, however, that would preclude the State from passing a statute providing for reasonable visitation by a grandparent with the grandchildren upon the finding that such visitation is in the child's best interest. The State has a sufficiently compelling interest in the welfare of children that it can provide for the continuation of relations between children and their grandparents under reasonable terms and conditions so long as that is in the children's interest. Since that is all the challenged statute purports to do, it is not facially unconstitutional.
Sketo at 906.
In a previous case before this court, In Interest of J.R.T., 427 So.2d 251 (Fla. 5th DCA 1983), HRS took the position that only it or a licensed child placement agency, and not the court, could initiate proceedings for the termination of parental rights. This position was rejected by this court citing the provisions of Section 39.404(1) which permit "any other persons with knowledge" to file such proceedings. That court did not pass on the constitutionality of that provision as we now do.
We hold that the State has a sufficiently compelling interest in the welfare of children to authorize someone with knowledge of facts sufficient to terminate parental rights to bring that issue before a judge even if (particularly when) HRS does not agree. Because HRS has seen fit to equate "any other person who has knowledge" with "stranger," we think it appropriate to construe the term to mean someone who is in a peculiar position so that such knowledge can be reasonably inferred; for example, the judge familiar with the file, the guardian or attorney for the children, neighbors or friends of the parties who, because of their proximity, would be expected to have such knowledge, etc. Certainly if an inappropriate petition is filed, the judge at a very early stage can so determine. If the issue is properly raised and if the allegations if proved would justify termination of parental rights, the welfare of the children and the interests of society demand a judicial determination.
REVERSED for further proceedings.
DANIEL, C.J., and PETERSON, J., concur.
NOTES
[1] § 39.461(1), Fla. Stat. (1989).
[2] We consider this a general attack on the statute and not a personal allegation against appellant herein. Certainly the record does not reflect any bad motives on the part of appellant.
[3] This conclusion is somewhat mystifying. HRS presented to the court the allegations and evidence of sexual abuse at a hearing where the mother was present and represented by counsel. The judge in his order of June 10, 1987 found that the examination by Dr. Jordan supported the allegations of sexual abuse of C.B. by the mother and terminated her visitation rights. If additional "proof" was required, it was HRS's obligation to produce it.